# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

DONALD LANTZ,                )
RONNIE WRIGHT,           )
                                   )
         Plaintiffs,          )
                                   )
      v.                      )       No. 1:10 CV 340
                                   )
THE OFFICE OF THE JACKSON    )
TOWNSHIP TRUSTEE, THE        )
JACKSON TOWNSHIP ADVISORY  )
BOARD, JACKSON TOWNSHIP, AND )
THE JACKSON TOWNSHIP         )
VOLUNTEER FIRE CORPORATION  )
OF DEKALB COUNTY,           )
                                   )
         Defendants.      )

## OPINION AND ORDER

This matter is before the court on the township defendants' (the Office of the Jackson Township Trustee, the Jackson Township Advisory Board, and Jackson Township) motion for summary judgment (DE # 34) and the Jackson Township Volunteer Fire Corporation of DeKalb County's motion for summary judgment (DE # 36). For the reasons set forth below, those motions are granted in part, and the remaining claims are remanded to state court.

## I.     Facts and Background

The following facts are not genuinely disputed.[1] The Jackson Township

---

[1] The facts that follow are construed most favorably to plaintiffs, the non-moving parties. *Chmiel v. JC Penney Life Ins. Co.*, 158 F.3d 966, 968 (7th Cir. 1998). The facts are taken from defendants' separate statements of material facts (DE # 37 at 2; DE # 35 at 2),

Volunteer Fire Corporation ("the VFC") provides firefighting protection services for Jackson Township, which is located in Dekalb County, Indiana. All of the VFC's corporate powers are vested in the Fire Corporation Board. This Board oversees all of the VFC's operations. In 2009, the Jackson County Trustee entered into an agreement with the Fire Corporation Board. Under the agreement, Jackson Township paid the VFC $38,500 a year for fire protection services.

The Fire Corporation Board is made up of eleven individuals. The Jackson Township Trustee and the Fire Chief are both mandatory members of the Fire Corporation Board. The other nine members are elected. The Fire Corporation has its own set of bylaws. Each year, the Fire Corporation Board appoints a Fire Chief and an Assistant Fire Chief.

Plaintiff Donald Lantz began his tenure at the VFC after joining as a volunteer firefighter in 2000. From that time, until the date he was terminated in 2009, Lantz held several positions, including Assistant Chief. Plaintiff Ronnie Wright began working for the VFC in 1982. Wright also held various positions within the corporation, including Fire Chief from 1991 to 2005. As volunteer firefighters, Lantz and Wright received a yearly stipend for clothing and reimbursement for training and attendance on fire runs.

_____

and from the deposition of plaintiff Lantz. (DE # 35-1; DE # 37 -2; DE # 39-1; DE # 41-1.) Although plaintiffs have filed two lengthy statements of disputed facts, they have not disputed any of the facts set out in this fact section.

In their various submissions, the parties discuss numerous other facts relevant to plaintiffs' state-law claims. As discussed in more detail below, the court will not address those claims, and will therefore limits this fact section to the facts relevant to plaintiffs' federal claims.

In 2008, the VFC held a fundraiser at which alcohol was served. At some point prior to the date of the fundraiser, Lantz, while at a meeting of firefighters and Fire Corporation Board members, announced that he would not be attending the fundraiser because his religious beliefs would not allow him to participate in an event that served alcohol to the public. (DE # 37-2 at 5.) The VFC planned to hold the same fundraiser in 2009. When it was announced that the same fundraiser would be held, but this time, sex toys would be auctioned off, Lantz stated to his fellow firefighters that he "would not participate again in [the] fundraiser." (*Id.*; DE # 39-1 at 76.) Although Lantz was not penalized in any way for failing to participate in the fundraisers, other members of the VFC started to shun him after he announced he would not be attending the 2009 fundraiser.

Lantz was involved in another incident that caused tension at the VFC.[2] One of Lantz's fellow volunteer firefighters, Todd Helgesen, also worked at a nightclub in Fort Wayne. At some point, Helgesen told Lantz two stories about his employment at the nightclub that caused Lantz to become alarmed about Helgesen's well-being. First, Helgesen told Lantz that someone had pointed a gun at his face while he was working security at the nightclub one night. Additionally, Helgesen told Lantz that twelve of his coworkers at the nightclub had been arrested for drug possession. After hearing these stories, Lantz called the nightclub that Helgesen was working at out of a concern for Helgesen's well-being. Lantz ended up voicing his concerns to Helgesen's supervisor,

---

[2] It is not clear from the parties' filings when this incident took place.

and later, the owner of the nightclub. After learning about this incident, Matt Logsdon, the Fire Chief at the time, approached Lantz about the phone calls to the nightclubs. Lantz told Logsdon that he was concerned for Helgesen's well-being, apologized for making the calls, and promised not to make any additional phone calls to the nightclub.

On March 23, 2009, the Fire Corporation Board met and decided to terminate both Lantz and Wright.[3] On September 1, 2010, plaintiffs filed suit in Indiana state court against the Jackson Township Trustee, the Jackson Township Advisory Board, Jackson Township, and the Jackson Township Volunteer Fire Corporation of Dekalb County. In their complaint (DE # 1), plaintiffs allege federal claims under 42 U.S.C. § 1983 for violations of the first amendment, and state-law claims of breach of contract, wrongful termination, defamation, libel, and violations of the Indiana Open Door Law. (DE # 1.) Additionally, plaintiffs seek a declaration that the removal of the plaintiffs from their positions with the VFC was invalid and in violation of 42 U.S.C. § 1983. The township defendants and the VFC have both moved for summary judgment on all of plaintiffs' claims.

---

[3] The parties do not agree on the reason that the plaintiffs were fired. For purposes of deciding the present motions, however, the court will assume that Lantz was fired for making his statement regarding the fundraiser and his statements regarding Helgesen. *Milwaukee Deputy Sheriff's Assoc. v. Clarke*, 574 F.3d 370, 377 (7th Cir. 2009) (employee has no cause of action for First Amendment retaliation if he or she is not speaking "'as a citizen on a matter of public concern.'" (quoting *Garcetti v. Ceballos,* 547 U.S. 410, 417 (2006))).

## II.    Legal Standard

FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing that there is an absence of evidence to support the non-moving party's case. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex,* 477 U.S. at 323). To overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)). The nonmoving party must show that there is evidence upon which a jury reasonably could find for him. *Id.*

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) (citing *Anderson,* 477 U.S. at 255). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966, 968 (7th Cir. 1998); *Doe,* 42 F.3d at 443. Importantly, the court is "not required to draw *every* conceivable inference from the record [in favor of the non-movant]-only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M., v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (emphasis added).

## III. Analysis

The court will begin and end its analysis with plaintiffs' First Amendment and § 1983 declaratory judgment claims.

### A. Lantz's First Amendment Claim

Plaintiffs provide two separate statements that they believe prompted Lantz's termination: Lantz's statement that he would not participate in the fundraiser, and the conversations Lantz had with Helgesen's superiors at the nightclub. (DE # 42 at 21.) Both groups of defendants have moved for summary judgment on Lantz's First

Amendment claim. The VFC argues that it is entitled to summary judgment on Lantz's First Amendment claim because the phone conversations Lantz had with Helgesen's supervisors did not involve a matter of public concern. (DE # 37 at 9.) The township defendants argue that they are entitled to summary judgment because Lantz's statement that he would not participate in the fundraiser did not involve a matter of public concern. (DE # 35 at 10.)[4]

The First Amendment prohibits "a public employer from retaliating against an employee for engaging in protected speech." *Clarke*, 574 F.3d at 376. The court must apply a three-step analysis to a First Amendment retaliation claim brought under 42 U.S.C. § 1983: "(1) the employee's speech must be constitutionally protected; (2) the employer's action must be motivated by the constitutionally protected speech; and (3) if the action was retaliatory, [the court must] consider whether the employer has demonstrated that it would have taken the same action irrespective of the employee's speech." *Id.* To be constitutionally protected, the speech must involve a matter of public

---

[4] Thus, the VFC and the township defendants have each moved for summary judgment on the same legal theory, but with respect to separate statements that Lantz contends prompted his termination. Because Lantz had the opportunity to respond to arguments regarding both sets of statements, the court will analyze these motions together as if both the VFC and the township defendants had argued that neither set of statements Lantz contends prompted his termination involved a matter of public concern. *See Malak v. Associated Physicians, Inc.,* 784 F.2d 277, 280 (7th Cir. 1986) ("[W]here one defendant files a motion for summary judgment which the court grants, the district court may *sua sponte* enter summary judgment in favor of additional non-moving defendants if the motion raised by the first defendant is equally effective in barring the claim against the other defendants and the plaintiff had an adequate opportunity to argue in opposition to the motion.").

concern.[5] *Kristofek v. Village of Orland Hills*, ---- F.3d ----, No. 12–2345, 2013 WL 932016, at *3 (7th Cir. 2013). "'Whether a statement rises to the level of public concern is a question of law, and in answering this question [the court must] look to the content, form, and context of the statement.'" *Id.* (quoting *Chaklos*, 560 F.3d at 712. The content of the speech, however, is the most important factor in determining whether the speech addressed a matter of public concern. *Id.*

"[I]f the objective of the speech—as determined by content, form, and context—is simply to further a purely personalized grievance, then the speech does not involve a matter of public concern." *Kristofek*, 2013 WL 932016, at *6. If the speech does involve a matter of public concern, "the court must balance the interest of the public employee, as a citizen, in commenting upon matters of public concern with the interest of the government, as the employer, in promoting the efficiency of the public services it provides." *Klug v. Chicago Sch. Reform Bd. of Trs.,* 197 F.3d 853, 857 (7th Cir. 1999). If the speech does not involve a matter of public concern, however, "the employee has no cause of action for First Amendment retaliation, and [the court] need not balance the employee's interests against the government's interest in promoting effective and efficient public services." *Clarke*, 574 F.3d at 377; *see also Metzger v. DaRosa*, 367 F.3d 699, 703 (7th Cir. 2004).

---

[5] To be protected, the public employee must also be speaking as a citizen, and not as an employee pursuant to their official duties. *Chaklos v. Stevens*, 560 F.3d 705, 711-12 (7th Cir. 2009). Neither the township defendants nor the VFC argue that Lantz's statements were made pursuant to his official duties.

Defendants contend that the statements plaintiffs rely on for their First Amendment claims do not involve matters of public concern because both statements were purely personal in nature. (DE # 35 at 10; DE # 37 at 11-12.) Plaintiffs argue that these statements were part of a message that Lantz wanted to convey regarding "how a firefighter should conduct themselves as a member of the [VFC]" and the conduct of firefighters while in public. (DE # 40 at 15; DE # 42 at 21.) The court will address each statement separately.

### 1.    Statement Regarding Fundraiser

The first statement that Lantz contends prompted his termination was his statement that he would not participate in the VFC's fundraiser. (DE # 42 at 21.) The content, form, and context of this statement weigh in favor of finding that it did not involve a matter of public concern. As to the content, Lantz testified in his deposition that when he found out that the fundraiser was serving alcohol and auctioning off sex toys, he told the other firefighters that "I will not participate again in this fundraiser." (DE # 35-1 at 4; DE # 37-2 at 5.) There is no evidence that Lantz elaborated on this point, although he did make a similar statement regarding the previous year's fundraiser.[6]

_____

[6] When the VFC had announced that it would hold a similar fundraiser the previous year, Lantz told his fellow firefighters and members of the Fire Corporation Board that his "spiritual beliefs would not allow [him] to participate in an activity like [the fundraiser.]" (DE # 35-1 at 4.) Lantz went on to make clear that his refusal to participate was based on the fact that there would be alcohol served at the event. (*Id.*) Plaintiffs do not argue that this statement involved a matter of public concern because it was motivated by Lantz's religious beliefs, and the court will not address that issue.

Although the topic of how firefighters conduct themselves as members of the fire department, or even whether it is appropriate for a taxpayer-funded fire department to hold a public event serving alcohol and auctioning off sex toys, certainly could be matters of public concern, nothing in the content of plaintiff's statement indicates that he raised those issues, and the content of the speech is what is important, "not the inchoate intentions or views that the speaker privately holds." *Wernsing v. Thompson*, 423 F.3d 732, 752 (7th Cir. 2005). Additionally, although plaintiffs contend that this statement was part of a larger message Lantz intended to convey regarding "how a firefighter should conduct themselves as a member of the [VFC]" and the conduct of firefighters while in public, plaintiffs have failed to direct the court to any evidence that supports this assertion. (DE # 40 at 15; DE # 42 at 21.)

The context of plaintiff's statement also weighs in favor of a finding that this statement did not involve a matter of public concern. When analyzing the context of a statement, the court must look to the speaker's motive and the circumstances surrounding the statement. *Miller v. Jones*, 444 F.3d 929, 937 (7th Cir. 2006); *see also Girten v. Town of Schererville*, 819 F. Supp. 2d 786, 795 (N.D. Ind. 2011). Lantz's deposition testimony reveals that he was motivated to make this statement by his own personal beliefs regarding religion and parenting. (DE # 35-1 at 4.) There is no evidence that Lantz raised any issue regarding the fundraiser after he announced that he would not participate, and "where considerations of motive and context indicate that an employee's speech raised a topic of general societal interest merely for personal reasons

rather than a desire to air the merits of the issue . . . these factors militate against the conclusion that the employee's speech is entitled to First Amendment protection." *DaRosa*, 367 F.3d at 702 (citation and quotation omitted). There is no indication here that Lantz made this statement in an attempt to get the VFC to change its policies on the fundraiser. Instead, the evidence shows Lantz was simply informing his coworkers that he would not be participating in the event.

Finally, in regard to form, Lantz made this statement to his fellow firefighters. (DE # 35-1 at 4.) Thus, this statement was entirely internal to the VFC, and although this does not render the speech unprotected, it does suggest that the statement was personal in nature. *Bivens v. Trent*, 591 F.3d 555, 561 (7th Cir. 2010); *see also Girten*, 819 F. Supp. 2d at 795.

Several Seventh Circuit decisions are instructive on these principles. In *Bivens*, the plaintiff, an Illinois State Police officer, was assigned to a position as a range officer at a firing range. 591 F.3d at 557. The plaintiff oversaw all aspects of the firing range's operations. *Id.* After he had worked at the firing range for a few months, the plaintiff began to feel extremely ill, and he became concerned that being exposed to lead at the firing range was the source of his medical problems. *Id.* The plaintiff expressed his concerns through the chain of command, and he eventually got a blood test done, which revealed that his lead levels were extremely high. *Id.* A few days later, the plaintiff filed a grievance with the state police union for a violation of the safe working conditions provision of the collective bargaining agreement. *Id.* The firing range was

eventually tested, and subsequently cleaned after elevated lead levels were found. *Id.*

The cleaning required that the range be closed for approximately nine months. *Id.* The

closure of the range received some local media attention. *Id.*

The plaintiff eventually filed a § 1983 suit against his supervisors at the state

police. In that suit, the plaintiff alleged that his supervisors had retaliated against him in

violation of the First Amendment for filing his grievance by docking his pay, subjecting

him to different rules than his coworkers, and harassment. *Id.* at 558-59. The defendants

moved for summary judgment, and the district court granted the motion after

concluding that the plaintiff was not speaking as a private citizen. *Id.* at 559. The

Seventh Circuit affirmed the district court's decision, but instead of relying on the

private citizen basis as the district court had, the Seventh Circuit ruled that the

plaintiff's grievance did not raise a matter of public concern. *Id.* at 562. In reaching that

conclusion, the court noted that although the subject matter of the plaintiff's grievance,

the elevated lead levels at the firing range, was potentially of interest to the public, the

court found that the speech was not protected because there was no evidence that the

plaintiff "was attempting to bring an issue of wrongdoing or environmental safety to

public light." *Id.* at 560-62.

The Seventh Circuit reached the same conclusion in *Smith v. Fruin*. 28 F.3d 646

(7th Cir. 1994). In that case, a Chicago police detective complained to his superiors

about a smoke-free workplace policy not being followed. *Id.* at 647. The plaintiff's

complaints were not addressed, and the plaintiff proceeded to complain to the health

department and the police department's office of legal affairs. *Id.* at 648. After the plaintiff complained to the health department the police department's office of legal affairs, the plaintiff was removed from his post investigating sex crimes, and was given a new assignment recording the license plate numbers of certain cars. *Id.* The plaintiff believed that his reassignment was in retaliation for speaking out on the smoking issue, and brought a First Amendment suit against his superiors. *Id.* at 648-49

The district court concluded that the plaintiff's comment regarding a smoke-free environment clearly involved a matter of public concern. *Id.* at 651. The Seventh Circuit disagreed. That court recognized that the issue of second-hand smoke was a matter of "widespread public interest," but the fact that the plaintiff had raised that issue did not automatically render his speech protected. *Id.* at 651. The Seventh Circuit concluded that the plaintiff's statements were purely personal in nature:

> [Each] time [the plaintiff] raised the smoking issue, he spoke solely in terms of his own sensitivity to smoke and the difficulty he had experienced with smokers at Area 5 headquarters. He did not cite any difficulties experienced by other non-smokers, nor did he purport to speak on behalf of anyone but himself. . . . The relief he requested was likewise individual; he simply wanted a work environment in which he would not be exposed to second-hand smoke.

*Id.* at 651-52

The Seventh Circuit reached the opposite conclusion in *Gschwind v. Heiden*. 692 F.3d 844 (7th Cir. 2012). In that case, the plaintiff, a public school teacher, was threatened with violence by a student during a classroom discussion. *Id.* at 845. The plaintiff considered filing a criminal complaint, but the school's principal and assistant

principal were not supportive, as they feared that the student's parents would sue the school. *Id.* at 845. The plaintiff eventually filed the criminal complaint despite the principal and assistant principal's concerns. *Id.* The following day, the plaintiff received an "unsatisfactory" evaluation, despite the fact that all of his previous evaluations had been "satisfactory." *Id.* at 845-46. The plaintiff was also informed by the principal and the assistant principal that if he did not resign from his position, the principal would recommend to the school board that the plaintiff's contract not be renewed for the following year. *Id.* at 846.

The plaintiff eventually brought a First Amendment retaliation suit against the school district, the principal, and the assistant principal. *Id.* at 845. The district court granted the defendants' motion for summary judgment, finding that the plaintiff's criminal complaint about being threatened did not involve a matter of public concern. *Id.* Specifically, the district court concluded that the plaintiff had filed the complaint out of a concern for his own personal safety, and thus, he had filed the complaint as a matter of purely private interest. *Id.* at 846. The Seventh Circuit disagreed, however, noting that violence in public schools is an issue that the public is in fact very interested in. *Id.* at 846. Additionally, in an affidavit, the plaintiff stated that one of the reasons he had filed the complaint was "'to bring to the public light the fact that such an incident had occurred.'" *Id.*

Lantz's statement in this case is more in line with the grievance filed in *Bivens* than the complaint filed in *Gschwind*. While the VFC's fundraiser may have been

a matter of public concern, there is no evidence that Lantz's statement regarding the fundraiser was anything other than a declaration, motivated by personal beliefs, that he would not participate in the fundraiser. *Marshall v. Porter County Plan Com'n*, 32 F.3d 1215, 1219 (7th Cir. 1994) ("If the speech concerns a subject of public interest but the *expression* addresses only the personal effect upon the employee, then as a matter of law the speech is not of public concern." (emphasis in original)). Additionally, like the plaintiff in *Fruin*, Lantz was speaking on his own behalf and only sought individual "relief," namely, he did not want to participate in the fundraiser. *Fruin*, 28 F.3d at 651.

As noted above, plaintiffs contend that the fundraiser statement and plaintiff's phone calls to Helgesen were part of a greater message that Lantz wanted to convey regarding how firefighters should behave as members of the fire department and that firefighters should set a positive example for the community. (DE # 40 at 14; DE # 42 at 21.) Despite this contention, plaintiffs do not direct the court to any evidence that Lantz's statement was motivated by a desire to change the fundraiser in any way or even to start a discussion about whether it was appropriate for the VFC to be holding an event that included serving alcohol or auctioning off sex toys. Additionally, as both groups of defendants point out in their reply briefs (DE # 43 at 1; DE # 44 at 5-6), there is no evidence that Lantz made this statement as part of some sort of larger message regarding "the public perception of firefighters and setting a positive example in the community." (DE # 40 at 1.)

The closest plaintiffs come to providing evidence to support this argument is a claim in a response brief that the Fire Chief, Matthew Logsdon, "understood that Lantz did not think [that the fundraiser serving alcohol and giving away sex toys] reflected well on the [VFC]." (DE # 40 at 5.) While it is "true that a listener's reactions are part of the calculus in determining whether a statement constitutes speech on a matter of public concern[,]" *Gross v. Town of Cicero,* 619 F.3d 697, 706 (7th Cir. 2010), plaintiffs do not cite any evidence to support their assertion that Logsdon thought Lantz did not believe that the fundraiser reflected well on the department. (DE # 40 at 5.) The court "is not required to scour the record for evidence that supports a party's case if the party fails to point it out; that is the counsel's job." *Dominguez v. Quigley's Irish Pub, Inc.*, 790 F. Supp. 2d 803, 805 (N.D. Ill. 2011). Despite this, a review of the portions of Logsdon's depositions that plaintiffs submitted with their response briefs (DE # 39-1 at 32; DE # 41 at 89), does not reveal any testimony that would support plaintiffs' assertion, and therefore, plaintiffs' have provided no evidence that Logsdon understood Lantz's statement to mean anything other than a declaration that Lantz would not participate in the fundraiser. *United States v. Stevens*, 500 F.3d 625, 628 (7th Cir. 2007) ("[A]rguments in a . . . brief, unsupported by documentary evidence, are *not* evidence." (emphasis in original)); *see also Campania Mgmt. Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 853 (7th Cir. 2002) ("[I]t is universally known that statements of attorneys are not evidence.").

Put simply, plaintiffs have not presented any evidence that "an objective of the speech was also to bring about change with public ramifications extending beyond the

personal[,]" *Kristofek*, 2013 WL 932016, at *6, or that the statement was made to "air the merits of the issue." *Fruin*, 28 F.3d at 652. Therefore, the court concludes that Lantz's statement did not involve a matter of public concern.[7]

### 2. Statements Regarding Helgesen

Defendants argue that Lantz's statements to Helgesen's supervisors at the night club that he worked at did not involve a matter of public concern. (DE # 37 at 9.) Plaintiffs contend that Lantz's phone calls with Helgesen's supervisors at the nightclub are protected speech because they involve a public matter, specifically, how a firefighter should act in public and the importance of emergency personnel avoiding dangerous situations. (DE # 40 at 15.) As noted above, Lantz made these phone calls after Helgesen told Lantz that someone had pointed a gun at Helgesen's face while working at the nightclub, and because Helgesen told Lantz that several of his coworkers at the nightclub had been arrested for drugs. (DE # 37-2 at 6.)

The content, context, and motivation of these statements all indicate that these statements did not involve a matter of public concern. As to the content, Lantz simply told the two supervisors he spoke to about the incidents Helgesen had told him about, and expressed concern for Helgesen's well-being. (DE # 39-1 at 79-83 (Lantz Deposition

---

[7] In their response briefs (DE # 40; DE # 42), plaintiffs cite several cases in support of their First Amendment claim. The only case plaintiffs cite regarding the public concern analysis is in regard to an argument that Lantz was not speaking pursuant to his official duties when he made his statements. (DE # 42 at 21.) As noted above, however, none of the defendants argue that Lantz made his statement pursuant to his official duties. Because the other cases plaintiffs cite support other aspects of their First Amendment claims, the court need not address them.

pages 20-24.)) The evidence presented also shows that Lantz was motivated to make these phone calls by his concern for Helgesen's well-being. (*See* Lantz Deposition page 23, lines 23-24 ("Well, I was calling concerning [Helgesen's] welfare . . . ."); Lantz Deposition page 25, lines 13-16 ("I was the one that made that call and just stated to [Fire Chief Logsdon] and the other officers of my concern from the comments [Helgesen] was making, my concern for [Helgesen's] well-being . . . ."); Lantz Deposition page 25-26 ("I had known [Helgesen] for the three years that he had been on and we created a really neat friendship, and early on he stressed that he never drinks alcohol or parties, a really neat kid, and once he got the job [at the VFC], his talk on the fire department was partying, getting drunk, a lot of sex with women, living with a girl now, his life I saw taking a total change. My plan [when calling Helgesen's employer] was to intervene and try to help him get back on the path and lifestyle that he had prior.").

Lantz was clearly concerned about the well-being of his friend and fellow co-worker Helgesen. As defendants correctly point out (DE # 43 at 1), there is no evidence that Lantz made these statements as part of a larger message about how firefighters behave in public or the importance of emergency personnel to avoid dangerous situations. There is also no evidence to indicate this concern had anything to do with the VFC or Helgesen's ability to do his job at the VFC. *Cf.  Sims v. Schultz*, 305 F. Supp. 2d 838, 842 (N.D. Ill. 2004) (concluding that speech related the ability of an officer who

tested positive for drug use to properly perform duties constituted matter involving a public concern).

The fact that Lantz expressed this concern outside of the VFC does weigh in favor of a finding that the statements involved a matter of public concern, but this is not enough to overcome the clearly personal nature of these statements as evidenced by their content and Lantz's motivation in making them.[8] *Kristofek*, 2013 WL 932016, at *5 ("[W]as it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?" (quoting *Linhart v. Glatfelter*, 771 F.2d 1004, 1010 (7th Cir. 1985)). Lantz's concern for the well-being of his friend is simply not "an issue in which the public at large would be genuinely interested." *Wallscetti v. Fox*, 258 F.3d 662, 667 (7th Cir. 2001); *see also Friend v. Lalley*, 194 F. Supp. 2d 803, 811-12 (N.D. Ill. 2002) (concluding that statements made to improve the plaintiff's son's situation at school did not involve a matter of public concern). Thus, the court concludes that the statements

---

[8] Although not cited or submitted by plaintiffs, an interrogatory response plaintiffs provided to defendants reveals that plaintiffs claim that the statements regarding Helgesen were made in an effort to raise awareness about alcohol abuse, drug abuse, and health concerns of the general public. (DE # 37-9 at 5.) In their response briefs, plaintiffs do not argue that Lantz's statements about Helgesen touched on matters of public concern regarding substance abuse, and the record as a whole makes the personal nature of Lantz's statements clear. *Fruin*, 28 F.3d at 652-653 ("[G]iven the plainly individual focus of [the plaintiff's] complaints, this single remark offered after-the-fact in the midst of litigation does not, in our view, transform the character of [the plaintiff's] speech.").

Lantz made regarding Helgesen's employment at the nightclub did not involve a matter of public concern.

Because the undisputed evidence shows that none of the statements that Lantz identifies as protected speech for his First Amendment claim involved a matter of public concern, defendants are entitled to summary judgment on that claim. *Clarke*, 574 F.3d at 381 ("Because we find that [plaintiff] did not speak on a matter of public concern . . . summary judgment in the defendant's favor was appropriate.")

**B.    Wright's First Amendment Claim**

In their brief in support of their motion for summary judgment, the township defendants argue that there is no evidence that Wright made any statements that could form the basis for a First Amendment claim. (DE # 35 at 10.) Plaintiffs do not respond to this argument in their response brief (DE # 42), and thus appear to have conceded that Wright has no First Amendment claim. In his deposition, Wright did not identify any statement that he made voicing any concern or objection regarding the statements Lantz believes he was fired for making. (DE # 35-3 at 3; DE # 41-1 at 46-48.) "In the retaliation context, speakers simply may not invoke the protections of the First Amendment based on unexpressed viewpoints or un-uttered thoughts." *Wernsing*, 423 F.3d at 753. Plaintiffs have not attempted to identify any statement or speech that Wright made which would support a First Amendment retaliation claim, and to the extent that Wright asserts a claim based on the statements Lantz made, the court has granted

summary judgment on Lantz's First Amendment claims. Therefore, defendants are entitled to summary judgment on Wright's First Amendment claim.

### C. 1983 Claim

Plaintiffs also seek a declaration that defendants' removal of plaintiffs from their positions was invalid and in violation of 42 U.S.C. § 1983. (DE # 1 at 10.) Specifically, plaintiffs contend that the removal of the plaintiffs "was done so illegally and invalidly in violation of the rules of the Corporation, Indiana Open Door Law, and in violation of Department policies and procedures." (*Id.*) As both groups of defendants correctly point out (DE # 35 at 14-15; DE # 37 at 13), in order to succeed on a claim under § 1983, a plaintiff must show: "(1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). The allegations that plaintiffs were removed from their positions in violation of the VFC's rules or the Indiana Open Door law do not allege violations of federal law. *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) ("[T]his court has consistently held that 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices." (citation and quotation omitted)); *see also Radunz v. Muhlhausen*, 375 F. App'x 618, 620 (7th Cir. 2010) ("[Section] 1983 applies only to violations of federal law.").

In their response briefs, plaintiffs do argue that their § 1983 declaratory judgment claim is based "free speech." (*See* DE # 42 at 31.) As discussed above, however,

defendants are entitled to summary judgment on plaintiffs' First Amendment claims.

Because plaintiffs have identified no other violations of federal law, defendants are

entitled to summary judgment on plaintiffs' § 1983 declaratory judgment claim.

### D. Remaining Claims

As mentioned above, plaintiffs also bring state-law claims of breach of contract,

wrongful termination, defamation, libel, and violations of the Indiana Open Door Law

against defendants. (DE # 1.) Because defendants have been granted summary

judgment on plaintiffs' § 1983 claims, the only claims that remain are plaintiffs' state-

law claims. This case was removed pursuant to 28 U.S.C. § 1331, the federal question

jurisdiction statute.[9] Thus, the claims that gave the court original jurisdiction over this

case will be dismissed.

28 U.S.C. § 1367(c) states:

**(c)** The district courts may decline to exercise supplemental jurisdiction over

a claim under subsection (a) if–

> **(1)** the claim raises a novel or complex issue of State law,

> **(2)** the claim substantially predominates over the claim or claims over
> which the district court has original jurisdiction,

---

[9] Defendants' notice of removal (DE # 2) actually lists 28 U.S.C. § 1332(a), the diversity of citizenship statute, as the basis of this court's jurisdiction. This appears to be a mistake, as the notice of removal goes on to state that "jurisdiction of this action exists in this [c]ourt by reason of federal question jurisdiction. More specifically, plaintiffs allege various violations of their constitutional and civil rights under 42 U.S.C. § 1983." (DE # 2 at 2.)

**(3)** the district court has dismissed all claims over which it has original jurisdiction, or

**(4)** in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Under 28 U.S.C. § 1367(c)(3), when, as here, the federal claims have dropped out of the lawsuit, a "district judge has discretion to relinquish supplemental jurisdiction and remand . . . ." *Whitely v. Moravec*, 635 F.3d 308, 311 (7th Cir. 2011).

The Seventh Circuit has identified three situations where a district court should retain jurisdiction over a supplemental claim even though all federal claims have dropped out: "where the statute of limitations would bar the refiling of the supplemental claims in state court…; where substantial federal judicial resources have already been expended on the resolution of the supplemental claims; and where it is obvious how the claims should be decided." *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 906-07 (7th Cir. 2007). This suit was originally filed in state court, and was removed, so the statute of limitations is not an issue. (DE # 2.) Additionally, the court has not spent substantial resources on the resolution of the state claims. Finally, it is not obvious how these claims should be decided.

Therefore, under 28 U.S.C. § 1367(c)(3), the court declines to continue to exercise jurisdiction over plaintiffs' state-law claims.

**IV.     Conclusion**

For the foregoing reasons, the court **GRANTS** the township defendants' (DE # 34) and the VFC's motions for summary judgment (DE # 36) as they relate to

plaintiffs' federal 42 U.S.C. § 1983 claims. Plaintiffs' remaining state-law claims of breach of contract, wrongful termination, defamation, libel, and violations of the Indiana Open Door Law are **REMANDED** back to state court. The clerk is directed to return the case to the state court from which it originated. The township defendants' motion to strike (DE # 45) is **DENIED AS MOOT**.

**SO ORDERED.**

Date: March 29, 2013

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT